894 So.2d 5 (2004)
Charles B. HIGGINS, Petitioner,
v.
STATE FARM FIRE AND CASUALTY COMPANY, Respondent.
Cheryl L. Ingalls, etc., Petitioner,
v.
State Farm Fire and Casualty Company, Respondent.
Nos. SC01-291, SC01-292.
Supreme Court of Florida.
September 30, 2004.
Rehearing Denied January 31, 2005.
*6 John P. Wiederhold of Wiederhold, Moses and Rubin, P.A., West Palm Beach, FL, on behalf of Charles B. Higgins; Theodore A. Deckert and Joseph K. Still, Jr., West Palm Beach, FL, on behalf of Cheryl L. Ingalls, f/k/a Cheryl L. Steele, for Petitioners.
Elizabeth K. Russo of Russo Appellate Firm, Miami, FL, and Spencer M. Sax of Sachs, Sax and Klein, P.A., Boca Raton, FL, for State Farm Fire and Casualty Company, Respondent.
WELLS, J.
We have for review the decision of the Fourth District Court of Appeal in State Farm Fire & Casualty Co. v. Higgins, 788 So.2d 992 (Fla. 4th DCA 2001) (en banc), which certified a question to be of great public importance with regard to one issue and certified conflict with the decisions of the Third District Court of Appeal in Irvine v. Prudential Property & Casualty Insurance Co., 630 So.2d 579 (Fla. 3d DCA *7 1993), and Burns v. Hartford Accident & Indemnity Co., 157 So.2d 84 (Fla. 3d DCA 1963), with regard to a second issue. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

I. FACTS AND PROCEDURAL HISTORY

A. Trial Court
On July 2, 1995, Cheryl Ingalls filed a complaint against Charles Higgins, seeking damages for the intentional torts of assault and battery. The complaint alleged that Higgins had "willfully, intentionally, and with malice" committed the assault and battery on June 4, 1995, when he arrived drunk at the home of his estranged wife, Maureen Bradley, where he encountered both Bradley and Ingalls and engaged in the following conduct:
7. As [Ingalls] was standing before the front door of the home, [Higgins], without provocation or reason pushed [Ingalls] into the front door on the porch of the home and then upon her managing to get up [Higgins] grabbed her, threw her into a pile of wood on the porch, and again threw her down onto the porch. He then stuck his fist in her face, told her "I could kill you right now and get you out of my way now." He then slapped her in the face.
8. [Higgins] then went into the home and lunged after his estranged wife, Maureen Higgins. [Ingalls] again tried to talk with [Higgins] and calm him down. Without warning, provocation, or reason, [Higgins] grabbed [Ingalls'] wrist and threw her against the stairs in the home. As [Ingalls] came up from the stairs he grabbed her wrist again and threw her across the room where she struck a couch and fell on the floor.
Subsequently, Ingalls served an amended complaint that excluded the above specific allegations and simply alleged that Higgins came upon the property "while under the influence of and impaired by alcohol" and "violently threatened, touched and injured" her. The amended complaint also added a negligence claim against Bradley for failing to warn or protect Ingalls.
The property on which these alleged events occurred was covered by a homeowners policy issued to Higgins by State Farm Fire and Casualty Company. That policy provided coverage for bodily injuries "caused by an occurrence" and defined an "occurrence" as "an accident, including exposure to conditions, which results in ... bodily injury; or ... property damage; ... during the policy period." Exclusions within the policy provided that there was no coverage for bodily injury "which is either expected or intended by an insured" or for bodily injury "to any person... which is the result of willful and malicious acts of an insured."
On the basis of his homeowners policy, Higgins demanded that State Farm defend and indemnify him in the action brought by Ingalls. In response, State Farm filed a declaratory action naming Higgins, Bradley, and Ingalls as defendants and seeking a determination as to whether it had a duty to defend and indemnify Higgins under the policy. State Farm argued that it had no such duty because the alleged conduct did not constitute an "occurrence" within the meaning of the policy and fell within both exclusions.
The circuit court consolidated the underlying action brought by Ingalls and the declaratory action brought by State Farm. After a settlement was later reached with Bradley, Ingalls again amended her complaint against Higgins. That second amended complaint excluded the prior assault and battery allegations and alleged simply that while Ingalls was on the property as a guest of Bradley, Higgins came *8 upon the property, began to argue with Bradley, and "negligently injured" Ingalls during the course of that altercation. As a result, State Farm amended its complaint for declaratory relief and argued that "despite the negligence label placed on Higgins' alleged conduct in the Second Amended Complaint in the underlying action, Higgins' alleged conduct was still of an intentional, willful, and malicious nature."
The declaratory action proceeded to a jury trial. In a special verdict form, the jury found that Higgins intended or expected to cause the injuries for which Ingalls was seeking damages and that Higgins willfully and maliciously caused those injuries. Post-trial, Ingalls moved for a new trial based on the remark of State Farm's counsel to the jury during opening statements that a settlement had already been reached between Ingalls and Bradley. The circuit court found that the remark violated section 768.041(3), Florida Statutes (1999), and granted a new trial. State Farm appealed, and Higgins and Ingalls cross-appealed on numerous points.

B. District Court
On appeal and cross-appeal, Judge Gross wrote for a unanimous en banc panel of the Fourth District Court of Appeal and addressed six issues, three of which are relevant to this review. Regarding the first relevant issue, the district court held that the trial court should have granted the motion of Higgins and Ingalls for directed verdict on the issue of State Farm's duty to defend the action against Higgins. See Higgins, 788 So.2d at 995-96. Following established case law that a liability insurer's duty to defend a claim made against its insured must be determined solely from the allegations in the underlying complaint,[1] the district court found that the allegations contained within the four corners of Ingalls' second amended complaint clearly placed the cause of action against Higgins within the duty-to-defend coverage of the policy. See id.
Regarding the second relevant issue, the district court held that the declaratory action was a proper vehicle to decide whether Higgins' conduct was excluded from the duty-to-indemnify coverage of the policy. See Higgins, 788 So.2d at 996-1002. The district court acknowledged case law holding that the declaratory judgment statute did not extend to actions in which the application of the language in an insurance policy to factual circumstances, rather than the language of an insurance policy itself, was in question. See, e.g., Columbia Casualty Co. v. Zimmerman, 62 So.2d 338 (Fla.1952); Smith v. Milwaukee Ins. Co., 197 So.2d 548 (Fla. 4th DCA 1967). However, the district court questioned the continued applicability of Columbia Casualty and Smith in view of a more recent trend in case law "in the direction of more freely allowing declaratory judgment suits as a vehicle for resolving fact issues deciding the existence of insurance coverage." Higgins, 788 So.2d at 1001. The district court cited decisions by the First, Second, and Fifth District Courts of Appeal as examples of this trend and noted that the Fifth District in Allstate Insurance Co. v. Conde, 595 So.2d 1005, 1008 (Fla. 5th DCA 1992), had certified the following question to this Court:
MAY THE INSURER PURSUE A DECLARATORY ACTION IN ORDER TO HAVE DECLARED ITS OBLIGATION UNDER AN UNAMBIGUOUS POLICY EVEN IF THE COURT *9 MUST DETERMINE THE EXISTENCE OR NONEXISTENCE OF A FACT IN ORDER TO DETERMINE THE INSURER'S RESPONSIBILITY?
Recognizing that this Court had not definitively ruled on that question, the district court certified the same question. Higgins, 788 So.2d at 1002.
Regarding the third relevant issue, the district court held that the trial court properly allowed the declaratory action to be tried prior to the resolution of the underlying liability action. Id. at 1002-06. The district court acknowledged two of its own prior decisions in which it concluded that an insurer's declaratory action seeking a determination of its duty to indemnify should have been deferred until the insured's liability was determined. See Home Ins. Co. v. Gephart, 639 So.2d 179 (Fla. 4th DCA 1994); Marr Investments, Inc. v. Greco, 621 So.2d 447 (Fla. 4th DCA 1993). However, the district court chose to partially recede from those prior decisions and adopt what it considered the "better procedural approach" adopted by the Fifth District in Conde, which held that an insurer could properly bring a declaratory action to determine both the duty to defend and the duty to indemnify prior to a determination of the insured's liability in the underlying action so long as the injured plaintiff also was made a party to the declaratory action. See Higgins, 788 So.2d at 1003-04. The district court found significant policy reasons supported this approach and held that it is a discretionary decision of the trial court to determine whether a declaratory action should be tried in advance of the underlying liability action. See id. at 1004-05. On this point, the district court also certified conflict with Burns v. Hartford Accident & Indemnity Co., 157 So.2d 84 (Fla. 3d DCA 1963) (insurer may not seek to have material issue from an underlying action predetermined in declaratory action), and Irvine v. Prudential Property & Casualty Insurance Co., 630 So.2d 579 (Fla. 3d DCA 1993) ("`[T]he better process is to require the insurer to defend the action under a reservation of rights.").
Following the Fourth District's en banc decision, Higgins and Ingalls sought this Court's jurisdiction to review the decision on the grounds of both the certified question and certified conflict. The two review proceedings were consolidated.

II. ANALYSIS
The question certified by the Fourth District is:
MAY THE INSURER PURSUE A DECLARATORY ACTION IN ORDER TO HAVE DECLARED ITS OBLIGATION UNDER AN UNAMBIGUOUS POLICY EVEN IF THE COURT MUST DETERMINE THE EXISTENCE OR NONEXISTENCE OF A FACT IN ORDER TO DETERMINE THE INSURER'S RESPONSIBILITY?
This question presents the issue of whether chapter 86, Florida Statutes (2003), Florida's declaratory judgments statute, authorizes declaratory judgments as to insurance policy obligations to defend and coverage for indemnity when it is necessary to decide issues of fact in order to determine the declaratory judgment. We conclude that the declaratory judgments statutes do authorize a declaratory judgment action to decide these issues. We recede from Columbia Casualty Co. v. Zimmerman, 62 So.2d 338 (Fla.1952), and the cases which relied upon it to the extent that the Columbia Casualty decision is in conflict with our answer to the certified question.
In respect to an insurer's obligation to defend, we first point out, as does *10 the district court opinion below, that an insurer's obligation to defend is determined solely by the claimant's complaint if suit has been filed. See Higgins, 788 So.2d at 995-96. This decision should in no way be as read as a rejection of the principle set forth in National Union Fire Insurance Co. v. Lenox Liquors, Inc., 358 So.2d 533, 536 (Fla.1977), that "[t]he allegations of the [underlying] complaint govern the duty of the insurer to defend." We approve the explanation of this obligation to defend as clearly explained by Judge Zehmer in Baron Oil Co. v. Nationwide Mutual Insurance Co., 470 So.2d 810 (Fla. 1st DCA 1985). Therefore, when suit is filed against an insured, there generally is no need for a declaratory action in respect to the insurer's obligation to defend.[2]
In respect to issues concerning the obligation to defend when there is no complaint and concerning insurance policy coverage for indemnity, we agree with the well-reasoned analysis of Judge Gross in the case below for the en banc Fourth District. We agree that the Court's use of declaratory judgments has evolved since this Court's decision over fifty years ago in Columbia Casualty. We conclude that in this decision we should give effect, for use in insurance coverage disputes, to all of the sections of Florida's declaratory judgments statutes and not limit the application of those statutes in these disputes to only the one section relied upon in Columbia Casualty. We believe that declaratory judgments are and can increasingly be a valuable procedure for the resolution of insurance coverage disputes to the benefit of insurers, insureds, and claimants.
The sections of Florida's declaratory judgments statutes, chapter 86, Florida Statutes (2003), that we conclude are applicable to declaratory judgment actions regarding insurance coverage provide:
86.011 Jurisdiction of trial court.  The circuit and county courts have jurisdiction within their respective jurisdictional amounts to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed.... The court may render declaratory judgments on the existence, or nonexistence:
(1) Of any immunity, power, privilege, or right; or

(2) Of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future. ...
86.021 Power to construe.  Any person claiming to be interested or who may be in doubt about his or her rights under a ... contract ... or whose rights, status, or other equitable or legal relations are affected by a ... contract ... may have determined any question of construction or validity arising under such ... contract ... or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.
....
86.051 Enumeration not exclusive.  The enumeration in ss. 86.021, 86.031 and 86.041 does not limit or restrict the exercise of the general powers *11 conferred in s. 86.011 in any action where declaratory relief is sought....
....
86.071 Jury trials.  When an action under this chapter concerns the determination of an issue of fact, the issue may be tried as issues of fact are tried in other civil actions in the court in which the proceeding is pending. To settle questions of fact necessary to be determined before judgment can be rendered, the court may direct their submission to a jury....
....
86.101 Construction of Law.  This chapter is declared to be substantive and remedial. Its purpose is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed.

(Emphasis added.)
As originally enacted, the Declaratory Judgment Statute, chapter 7857, Laws of Florida (1919), was considered and its scope first defined in Sheldon v. Powell, 99 Fla. 782, 128 So. 258 (1930). Later, that statute was replaced with the uniform Declaratory Judgment Act, chapter 21820, Laws of Florida (1943) (Act), which was considered and its scope defined in Ready v. Safeway Rock Company, 157 Fla. 27, 24 So.2d 808 (1946). In Ready, the Court stated that the amended Act enlarged the scope of substantive and remedial remedies and was a legislative attempt to extend procedural remedies to comprehend relief in cases where technical or social advances have tended to obscure or place in doubt one's rights, immunities, status, or privileges. Id. at 808-09. Although the Act was later transferred to chapter 86 of the Florida Statutes and a few of its provisions were amended, see ch. 67-254, § 38, Laws of Fla., the language of the provisions quoted above and the purpose of the Act have remained largely unchanged since 1943.
In 1952, this Court issued its decision in Columbia Casualty Co. v. Zimmerman, 62 So.2d 338 (Fla.1952), in which it addressed the propriety of a declaratory action seeking a determination of whether under an automobile insurance policy an insurer was obligated to defend a pending suit against and indemnify a driver who the insurer asserted did not have the knowledge and consent of the vehicle's owner when the relevant accident occurred. The Court quoted that portion of the Act now found in section 86.021 and held:
There must be some doubt as to the proper interpretation of the written contract or as to the existence or non-existence of some right, status, immunity, power or privilege under the written contract, and that a construction thereof is necessary in order to determine the rights of a party having such doubt as to the meaning of the contract.
Columbia Casualty, 62 So.2d at 340. Noting that the policy's exclusionary provision upon which the insurer relied was plain and unambiguous and that the only question the insurer sought to have determined in the declaratory action was a purely factual one, namely, whether the defendant was driving the insureds' vehicle with the knowledge and consent of the insureds, the Court concluded that a declaratory action was improper. Id. at 339-40.
As the Fourth District noted in the decision below, the Columbia Casualty Court did not refer to other portions of the Act that supported a broader interpretation of its scope. Specifically, the Court did not refer to:
(1) the part of the Act, now found in section 86.011(2), Florida Statutes, which provides that the court may render *12 declaratory judgments on the existence or nonexistence of any immunity, power, privilege, or right, or of "any fact upon which the existence or nonexistence of such immunity, power, privilege or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future" (emphasis added);
(2) the part of the Act, now found in section 86.051, which provides that the enumeration in section 86.021, upon which the Court relied in Columbia Casualty, does not limit or restrict the exercise of the general powers conferred in section 86.011;
(3) the part of the Act, now found in section 86.071, which provides for jury trials when an action under the Act concerns the determination of an issue of fact; or
(4) the part of the Act, now found in section 86.101, which provides that the Act is to be liberally administered and construed.
We agree with the Fourth District that sections 86.011(2), 86.051, 86.071, and 86.101 support the conclusion that an insurer may pursue a declaratory action which requires a determination of the existence or nonexistence of a fact upon which the insurer's obligations under an insurance policy depend. First, the use of the word "or" between subsections 86.011(1) and (2) clearly indicates that the courts have the general power to issue declaratory judgments not only in suits seeking a determination of the existence or nonexistence of any "immunity, power, privilege, or right" but also in suits solely seeking a determination of any fact affecting the applicability of an "immunity, power, privilege, or right." As the Fifth District correctly concluded in Conde, in suits for declaration as to insurance coverage, the insurer "is asking that the court, pursuant to section 86.011, determine `the existence or nonexistence' of a `fact [to wit: whether the shooting was intentional] upon which the existence or nonexistence of ... immunity [lack of coverage] ... does or may depend.'" Conde, 595 So.2d at 1007. Second, although section 86.021, upon which Columbia Casualty exclusively relies, grants to the courts the power to determine any question of "construction or validity" arising under a contract, section 86.051 states that the enumeration of powers in section 86.021 "does not limit or restrict the exercise of the general powers conferred in section 86.011." Therefore, we now conclude that the Columbia Casualty decision was too limiting of the scope of section 86.021 when read with this other section of the statutes. Third, the Legislature clearly contemplated fact-finding in declaratory actions. Section 86.071 expressly provides a mechanism for jury trials when an action under the Act concerns the determination of an issue of fact. Fourth and finally, section 86.101 clearly provides that chapter 86 is to be "liberally administered and construed." We recently stated in Olive v. Maas, 811 So.2d 644, 648 (Fla.2002), that there has been a "repeated adherence by Florida courts to the notion that the declaratory judgment statute should be liberally construed." This supports the conclusion that chapter 86 is not read as narrowly in recent decisions as it was in Columbia Casualty.
We also agree with the Fourth District's explanation that the Columbia Casualty court took a stricter view of the Act at a time before the efficiency and effectiveness of declaratory judgment actions had been developed. As the Fourth District stated:
The earlier Florida cases like Columbia Casualty... grew out of a legal climate where courts enforced more rigid pleading requirements and viewed causes of action as narrow pigeonholes *13 within which litigants were required to fit their claims. Prior to 1967, Florida's law and equity courts were separate. See Weinstein v. Aisenberg, 758 So.2d 705, 708 n. 1 (Fla. 4th DCA 2000) (Gross, J., concurring). A declaratory judgment began in Florida as an action in equity. The predecessor to the Uniform Declaratory Judgments Act, was "limited in scope" and provided that anyone "interested under a deed, will, contract in writing or other instrument in writing may file a bill in equity for the determination of any question of construction arising under the instrument...." Ready v. Safeway Rock Co., 157 Fla. 27, 24 So.2d 808, 809 (1946).
The 1943 Uniform Declaratory Judgments Act, Chapter 21820, Laws of Florida (1943), enlarged "the scope of substantive and remedial remedies over its predecessor." Ready, 24 So.2d at 808. It blurred the distinction between law and equity by making the remedy available on the law side of the court, giving a law judge the "power to give as full and complete equitable relief as it would have had if such proceeding had been instituted as a bill in equity." Ch. 21820, Laws of Fla. (1943). Faced with a new, potentially far-reaching cause of action, the early Florida cases were cautious in interpreting the new act. See, e.g., Ready, 24 So.2d at 810-812 (Brown, J., concurring).
Higgins, 788 So.2d at 1005 (footnote omitted). And while decisions by both the district courts[3] and this Court[4] have relied upon or reaffirmed the precedent of Columbia Casualty, in more recent years, the district courts and this Court have not rigidly adhered to the narrow application of the declaratory judgment statutes in Columbia Casualty.
The district court decision which initially certified the present question provides an informative discussion of the need to have the declaratory judgment statutes construed so that declaratory judgment actions are an available procedure to resolve insurance coverage controversies. In its en banc decision in Conde, the Fifth District receded from its own prior decision in Vanguard Insurance Co. v. Townsend, 544 So.2d 1153 (Fla. 5th DCA 1989), in which it had relied upon Columbia Casualty's narrow reading of the Act. In Conde, the defendant/insured, Osvaldo Conde, shot a woman and her two children. The woman sued Conde, alleging alternative counts of intentional wrongdoing and negligent conduct. Conde's insurer filed a declaratory action, claiming his conduct was intentional and thus not covered by his policy.[5] The trial court held that the declaratory action was not available to determine the coverage issue. On appeal, the Fifth District disagreed, stating:
In Vanguard we held that Chapter 86 can only be used to "settle the meaning of ambiguous language or clauses in an insurance policy." ... This interpretation limits Chapter 86 to little more than a codification of the parol evidence rule. Chapter 86 should not be read so narrowly. *14 One of the reasons for permitting parties to have their rights (and obligations) under contract determined is to avoid protracted and unnecessary litigation....
Allstate asks in its complaint that the court determine that no coverage existed because the shooting was intentional. This clearly invokes the court's jurisdiction under section 86.011(2) and not section 86.021.
In effect Allstate is asking that the court, pursuant to section 86.011 determine "the existence or nonexistence" of a "fact [to wit: whether the shooting was intentional] upon which the existence or nonexistence of ... immunity [lack of coverage]... does or may depend[.]" The legislature has given the court the authority to do so.
Conde, 595 So.2d at 1006-07 (footnote omitted) (alterations in original). In a footnote to this analysis, the Fifth District added:
In Columbia Casualty Co. v. Zimmerman, 62 So.2d 338 (Fla.1952), the court, limiting its consideration to what is now section 86.021 (the power to construe deeds, wills, contracts) denied the use of a declaration action to determine purely factual matters. The majority in [Columbia Casualty], perhaps because of the pleadings, did not consider the more expansive provisions of what is now section 86.011 which specifically authorizes the court to determine if a fact exists (intentional shooting) which would establish the existence of an "immunity, power, privilege or right" (lack of coverage). If the legislature did not contemplate some fact finding in declaratory actions, it is curious why section 86.071 provides that "a determination of an issue of fact" may be submitted to a jury. Because of the general statements in [Columbia Casualty], however, we certify the question to the supreme court.
Conde, 595 So.2d at 1007 n. 4. Significantly, while the en banc decision in Conde was not unanimous on all points, no judge dissented from the decision to recede from Vanguard and reject Columbia Casualty's narrow reading of the Act. Thus, we now have unanimous en banc decisions from both the Fourth and the Fifth Districts to allow the resolution of factual issues in these declaratory judgments.
Though the question certified in Conde was not decided by this Court, by implication we have recognized, without directly referring to Columbia Casualty, that a declaratory judgment action was an available procedure to decide insurance coverage in a case involving a determination as to the existence or nonexistence of a fact. See Canal Insurance Co. v. Reed, 666 So.2d 888 (Fla.1996). In Canal Insurance, we addressed the certified question of whether, when a third-party declaratory action[6] results in an order requiring an insurer to provide liability coverage for its insured in an underlying action, the insurer may seek immediate review of the order prior to final resolution of the underlying liability action. We answered that question in the affirmative on the basis of section 86.011, which states that a declaratory judgment "has the force and effect of a final judgment." We concluded that a declaratory judgment is appealable as a final order and specified that this was true "regardless of whether the judgment is rendered in a separate declaratory judgment action or as part of a third-party action such as that is at issue here." *15 Canal Insurance, 666 So.2d at 891. Further, we stated that "[i]n reaching this conclusion, we emphasize that the coverage dispute could have been resolved under either of those procedural mechanisms." Id. The question which was resolved in the declaratory action was the fact question of whether the injured party was an employee of the insured at the time of the accident and thus fell within an exclusionary provision of the policy. Following our decision in Canal Insurance, Florida Rule of Appellate Procedure 9.110, which governs inter alia appeal proceedings for review of final orders, was in fact amended to add subdivision (m), which states, "Judgments that determine the existence or nonexistence of insurance coverage in cases in which a claim has been made against an insured and coverage thereof is disputed by the insurer may be reviewed either by the method prescribed in this rule or that in rule 9.130." This amendment obviously contemplates declaratory judgments in insurance coverage disputes.
We conclude that it is illogical and unfair to not allow insureds and insurers to have a determination as to whether coverage exists on the basis of the facts underlying a claim against an insurance policy. Why should an insured be placed in a position of having to have a substantial judgment against the insured without knowing whether there is coverage from a policy? Why should an insurer be placed in a position of either paying what it believes to be an uncovered claim or being in jeopardy of a bad faith judgment for failure to pay a claim? These are precisely the issues recognized by this Court in other contexts that are intended to come within the purpose of the declaratory judgment statute's "relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations." Coalition for Adequacy & Fairness in School Funding, Inc. v. Chiles, 680 So.2d 400, 404 (Fla.1996). We agree with what Chief Justice Pariente stated as a judge of the Fourth District Court of Appeal, in Britamco Underwriters, Inc. v. Central Jersey Investments, Inc., 632 So.2d 138, 141 (Fla. 4th DCA 1994):
Generally, an insurance carrier should be entitled to an expeditious resolution of coverage where there are no significant, countervailing considerations. A prompt determination of coverage potentially benefits the insured, the insurer and the injured party. If coverage is promptly determined, an insurance carrier is able to make an intelligent judgment on whether to settle the claim. If the insurer is precluded from having a good faith issue of coverage expeditiously determined, this interferes with early settlement of claims. The plaintiff certainly benefits from a resolution of coverage in favor of the insured. On the other hand, if coverage does not exist, the plaintiff may choose to cut losses by not continuing to litigate against a defendant who lacks insurance coverage.
We therefore answer the certified question in the affirmative, hold that the declaratory judgment statutes authorize declaratory judgments in respect to insurance policy indemnity coverage and defense obligations in cases in which it is necessary to resolve issues of fact in order to decide the declaratory judgment action, and recede from Columbia Casualty to the extent that it is inconsistent with this holding.
Having approved the Fourth District's decision that the declaratory judgment statutes can be used to decide disputes in respect to insurance policy indemnity coverage and defense obligations, we believe that it is necessary to discuss the issue of whether the declaratory judgment action or the underlying action between the claimant and *16 the insured is to proceed first. The issue of the timing of these two separate but related actions involves numerous fact-intensive considerations.
In Canal Insurance, we recognized that the question of whether to stay the underlying action through an appeal of the declaratory judgment was within the discretion of the trial judge. We stated:
Although we find that this declaratory judgment regarding a determination of insurance coverage is reviewable as a final order, we must also stress that such a judgment will not automatically result in a stay in the independent underlying cause of action. This is because the underlying personal injury action is separate and distinct from the insurance coverage dispute. The trial judge has the discretion to stay the underlying action between the parties pending resolution of the appeal or to permit it to continue concurrently with the appeal process.

666 So.2d at 892 (citation omitted) (second emphasis added).
In Conde, the Fifth District judges who wrote opinions each discussed matters which are of genuine concern in determining whether a declaratory judgment action as to insurance policy indemnity coverage should proceed ahead of the underlying tort actions. One consideration is what issues are involved in the two actions. In Conde, as in the instant case, the issue was whether the claim against the insured arose from acts by the insured which were intentional or negligent. The policies excluded claims based upon intentional wrongdoing. Judge Harris stated in Conde:
Because the complaint alleges facts that bring the action within the coverage of the policy and facts that exclude coverage, the insurer must defend its insured "at least until such time as the covered portions of the claim have been eliminated from the suit."[n.]
[n.] C.A. Fielland, Inc. v. Fidelity & Casualty Co. of New York, 297 So.2d 122, 127 (Fla. 2d DCA 1974), cert. denied, 309 So.2d 6 (Fla.1975). Conde "purchased" not only an indemnity contract but also a contract to defend him from all claims  even fraudulent  covered by the policy. So long as the negligence count remains against him, the insurer must defend him. If, however, the cause of action against Conde is limited to the uninsured intentional act, he is entitled to neither indemnity nor defense.
But in this case there are not some claims that are covered and some that are not; the asserted claims are mutually exclusive. Either the claim is covered or it is not. Therefore, the insurer must provide defense until the coverage issue is resolved. In a case such as this  alternative, mutually exclusive theories  the indemnity issue and the duty to defend issue are inextricable. The resolution of one necessarily resolves the other.
Conde, 595 So.2d at 1006. Judge Harris concluded that an early resolution of this issue is essential. We do not go that far, but rather, we hold that this is a factor to which the trial judge should give weight in the exercise of discretion as to whether the insurance indemnity coverage issue should proceed ahead of the underlying tort action.
Another matter which must be weighed by the trial judge is whether proceeding to a decision as to the insurance indemnity issue will promote settlement and avoid the problem of collusive actions between claimants and insureds in order to create coverage where coverage does not exist under the true facts. Judge Griffin discusses *17 this factor in her concurring opinion in Conde:
The problem is that such a pleading creates a perfect conspiracy between a plaintiff and the insured and the insurer has no remedy.
The plaintiff pleads negligence in a case like this because he wants a deep pocket from which to satisfy a judgment or, even better, to obtain a settlement. Normally when a defendant is sued on a theory that is inadequately pleaded, he gets the claim dismissed or, if the claim is invalid under controlling law, he gets a summary judgment. But in cases such as this the normal antidotes for invalid claims do not work. An insured defendant is often totally committed to the negligence pleading of the plaintiff because as long as the negligence claim is included in the complaint, the insured must be provided a defense on the intentional tort claim, a benefit he would not have if the spurious negligence claim were missing. It is also more likely the insurer will come up with the money to settle the entire case based on the cost of defending the negligence claim. In many of these cases, the defendant even has some relationship with the victim, or a sense of remorse, and thus has either an emotional or financial stake in having the plaintiff succeed in recovering a judgment under a theory covered by insurance. In a case where neither the plaintiff nor the defendant wants the covered claim disposed of, it is most unlikely to disappear.
If the fictional covered claim is not disposed of, the insurer is faced with providing a defense of the entire action through trial, the cost of which is generally the impetus for paying sums to a plaintiff in settlement that would not be payable under the policy. Only the insurer is interested in quickly defeating the covered claims and the insurer has no forum to be heard.
Id. at 1009 (Griffin, J., concurring). In respect to settlements, all parties are in a better position to enter into settlement negotiations when the decision as to coverage has been put to rest.
On the other hand, Judge Sharp and Judge Diamantis make sound points which also should be weighed by a trial judge. Judge Sharp is clearly correct that there are cases with insureds who have resources independent of insurance and that it would be immaterial to the claimant whether the insured's conduct was covered or not covered by indemnity insurance. In those cases, as in all cases, the hardship of delaying the claimant in proceeding to judgment against the insured must be weighed.
We agree with Judge Diamantis that the resolution of the timing issue in accord with International Surplus Lines Insurance Co. v. Markham, 580 So.2d 251 (Fla. 2d DCA 1991), in which the court indicated that the duty to defend issue should be resolved early but the insurance indemnity action abated until after the underlying tort action is final, may be necessary in some cases. But, for the reasons stated above, we believe that there are factors which weigh in favor of trying the indemnity coverage issue first.
We conclude that there is too infinite a variety of circumstances for there to be a rule applicable in all cases. For that reason, we continue to hold that the timing determination is within the discretion of the trial court weighing the factors we have outlined as well as the factors of the particular case.
In the present case, we approve the decision of the district court affirming the trial court's decision to have the indemnity *18 coverage issue tried prior to the underlying tort action.

III. CONCLUSION
On the basis of sections 86.011(2), 86.051, 86.071, and 86.101, as well as with an understanding of the evolution of the declaratory action in Florida's jurisprudence, we answer the certified question in the affirmative and recede from Columbia Casualty and its progeny. For the foregoing reasons, we approve the Fourth District's conclusions regarding the motions of Higgins and Ingalls on the issue of State Farm's duty to defend, the propriety of the declaratory action as a means of determining State Farm's duty to indemnify, and the trial court's exercise of discretion in allowing the declaratory action to be tried prior to the resolution of the underlying liability action.
It is so ordered.
ANSTEAD, CANTERO and BELL, JJ., concur.
QUINCE, J., dissents with an opinion, in which LEWIS, J., concurs.
PARIENTE, C.J., recused.
QUINCE, J., dissenting.
I would answer the certified question in the negative and quash the Fourth District's decision. The Fourth District held that "a declaratory judgment is proper to determine the existence of insurance coverage, a ruling that is consistent with the modern trend according broad scope to the Declaratory Judgments Act, Chapter 86, Florida Statutes (2000)." State Farm Fire & Cas. Co. v. Higgins, 788 So.2d 992, 994 (Fla. 4th DCA 2001). In other words, the Fourth District held that the declaratory judgment could determine issues of fact involving the underlying civil lawsuit. Id. The majority agrees with the Fourth District, finding that the declaratory judgment statutes do authorize a declaratory judgment action to decide underlying issues of fact, thereby receding from Columbia Casualty Co. v. Zimmerman, 62 So.2d 338 (Fla.1952). Majority op. at 9-10.
I dissent because I believe that a declaratory judgment action is not proper when it involves determining the existence of an ultimate fact in the underlying litigation in order to declare the insurer's responsibility under an unambiguous policy. My view is consistent with Zimmerman, and the many decisions that have followed Zimmerman, which hold that for a declaratory judgment of an insurance policy to lie, there must be a question regarding construction of the policy, and not only fact issues for resolution. See, e.g., Lambert v. Justus, 335 So.2d 818 (Fla.1976); Bergh v. Canadian Universal Ins. Co., 216 So.2d 436 (Fla.1968); Travelers Indem. Co. v. Johnson, 201 So.2d 705 (Fla.1967); New Amsterdam Cas. Co. v. Intercity Supply Corp., 212 So.2d 110 (Fla. 4th DCA 1968); Smith v. Milwaukee Ins. Co., 197 So.2d 548 (Fla. 4th DCA 1967). Thus, I would adhere to the precedent established by this long line of cases following Zimmerman and answer the certified question in the negative.
If a declaratory judgment action were proper, as the majority finds, then it should logically be deferred until resolution of the underlying negligence suit; otherwise, the insurer could take control of the pleadings and effectively amend the complaint. It is well-settled law in Florida that a liability insurer's obligation to defend a claim made against its insured must be determined solely from the allegations in the complaint. See Nat'l Union Fire & Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 536 (Fla.1977). The duty to defend arises when the complaint alleges facts *19 that fairly and potentially bring the suit within policy coverage. See McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So.2d 692, 695 (Fla. 4th DCA 1999). The duty to defend is broader than the duty to indemnify in the sense that the insurer must defend even if the facts alleged are actually untrue or the legal theories unsound. See West Am. Ins. Co. v. Silverman, 378 So.2d 28, 30 (Fla. 4th DCA 1979). "Once the insurer's duty to defend arises, it continues throughout the case unless it is made to appear by the pleadings that the claims giving rise to coverage have been eliminated from the suit." Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810, 812 (Fla. 1st DCA 1985). In the instant case, the district court correctly found that State Farm had a duty to defend.
Thus, all that remains to be decided in the declaratory judgment action in this case is a determination of State Farm's duty to indemnify. If an insurer has a duty to defend, "then any determination as to its duty to indemnify should be deferred until the issue of [the insured's] liability is decided." International Surplus Lines v. Markham, 580 So.2d 251 (Fla. 2d DCA 1991). But see Allstate Insurance Co. v. Conde, 595 So.2d 1005 (Fla. 5th DCA 1992) (en banc) (distinguishing Markham and finding that where alternative, mutually exclusive theories are alleged, the indemnity issue and the duty to defend are inextricable and the resolution of one necessarily resolves the other). Unlike Conde, however, the instant case is not an "all or nothing" case. While there are some cases that present facts which would allow the issue of the duty to indemnify to be decided in a declaratory action prior to the conclusion of the underlying suit, this is not one of those cases. See, e.g., Britamco Underwriters, Inc. v. Central Jersey Invs., Inc., 632 So.2d 138 (Fla. 4th DCA 1994) (holding that where the insurer seeks to determine issues of coverage not dependent on the resolution of fact issues common to the underlying litigation, it is entitled to litigate the coverage issue in a separate declaratory judgment action while simultaneously defending the insured under a reservation of rights); see also Home Ins. Co. v. Gephart, 639 So.2d 179, 180 (Fla. 4th DCA 1994) ("Although some cases present facts that allow the issue of the duty to indemnify to be decided in a declaratory action prior to the conclusion of the underlying suit, the facts of the present case do not present such a situation.").
Both the majority in this case and other states that have allowed this extension of a declaratory judgment action have done so espousing the principle that declaratory judgment jurisdiction should be liberally construed and administered. See § 86.101, Fla. Stat. (2003). However, such liberal constructions should only be done to further the purpose of declaratory actions. The purpose of such actions is to declare rights, status, and other equitable or legal relations. See Coalition for Adequacy and Fairness in School Funding, Inc. v. Chiles, 680 So.2d 400 (Fla.1996); State Farm Mut. Auto. Ins. Co. v. Marshall, 618 So.2d 1377 (Fla. 5th DCA 1993). Declaratory relief is not available to try disputed questions of fact rather than rights, status or relations of the parties. See X Corp. v. Y Person, 622 So.2d 1098 (Fla. 2d DCA 1993).
In this case, State Farm was in doubt of only one question: the ultimate issue in the underlying negligence suit. Because in this case there was no policy provision to construe, I would find that State Farm cannot bring that issue in its own declaratory judgment action. I would thus answer the certified question in the negative and quash the decision of the Fourth District which allows a declaratory judgment *20 action on the issue of indemnity when such an action requires resolution of an issue of fact in the underlying lawsuit. To hold otherwise is to allow the defendant to have control over the litigation brought by the plaintiff. I do not believe that the declaratory judgment statute was intended to be used in this fashion.
LEWIS, J., concurs.
NOTES
[1] See, e.g., State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1077 n. 3 (Fla.1998).
[2] We note, however, that there are some natural exceptions to this where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint. One example would be when the insurer claims that the insured did not provide sufficient notice of the claim and therefore breached an assistance and cooperation clause. In such circumstances, we believe the courts may entertain a declaratory action seeking a determination of a factual issue upon which the insurer's duty to defend depends.
[3] See, e.g., Vanguard Insurance Co. v. Townsend, 544 So.2d 1153 (Fla. 5th DCA 1989); New Amsterdam Casualty Co. v. Intercity Supply Corp., 212 So.2d 110 (Fla. 4th DCA 1968); Smith v. Milwaukee Insurance Co., 197 So.2d 548 (Fla. 4th DCA 1967); Burns v. Hartford Accident & Indemnity Co., 157 So.2d 84 (Fla. 3d DCA 1963).
[4] See Lambert v. Justus, 335 So.2d 818 (Fla.1976); Bergh v. Canadian Universal Ins. Co., 216 So.2d 436 (Fla.1968); Travelers Indemnity Co. v. Johnson, 201 So.2d 705 (Fla.1967).
[5] The Conde decision does not specify the type of policy at issue, but the facts suggest that the shootings may have occurred in Conde's home and that his homeowners policy was at issue.
[6] A "third party declaratory action" refers to the circumstances in which an insured defendant brings a third-party complaint for liability coverage against its insurer as part of the underlying personal injury action.