**CLARENDON AMERICA INSURANCE COMPANY, as subrogee of GDW Partnership, Ltd., and Ross Development Corp., Plaintiff,**

v.

**The BURLINGTON INSURANCE COMPANY, Commercial Casualty Insurance Company of North Carolina, and Florida Insurance Guaranty Associate, Inc., Defendants.**

**Case No. 08–20096–CIV.**

United States District Court,
S.D. Florida.

June 4, 2009.

William John McFarlane, III, McFarlane & Dolan, Coral Springs, FL, Alejandro Perez, Cole Scott & Kissane PA, Miami, FL, for Plaintiff.

John Patrick Joy, Walton Lantaff Schroeder & Carson, Fort Lauderdale, FL, David Michael Goldstein, Marcos Rothman Scharf & Valdes PA, Hollywood, FL, for Defendants.

## ORDER GRANTING DEFENDANT BURLINGTON INSURANCE COMPANY'S MOTION FOR FINAL SUMMARY JUDGMENT (D.E. 88)

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on Defendant Burlington Insurance Company's Motion for Final Summary Judgment ("Motion," D.E. 88) filed on February 27, 2009. Plaintiff filed its Opposition to Defendant Burlington's Motion (D.E. 123) on March 30, 2009. Defendant Burlington filed its Reply (D.E. 125) on April 9, 2009. Having reviewed the Motion, the related papers, and the record, the Court finds as follows.

### I. Background

#### A. The GDW–MVP lease

Plaintiff is an insurance company. Plaintiff insured GDW Partnership, Ltd., and Ross Development Corp. ("GDW"). GDW owned the El Palacio Hotel in Miami, Florida, and leased a portion of the premises to B & M Consulting Corp. d/b/a MVP Bar and Grill ("MVP"). Pursuant to the lease agreement, MVP was required to procure liquor liability insurance for the premises and name GDW as an additional insured on all insurance policy policies. (*See* D.E. 122–3 at 77.) Additionally, MVP agreed to indemnify and hold harmless GDW for any liability arising from all loss, cost, damage or expense, including attorneys' fees through and including all trial and appellate levels, arising out of or from any accident or other occurrence, due to the acts or neglect of MVP, or its servants or agents, on or about the premises. (*Id.* at 78–79.)

#### B. MVP's liquor liability insurance policy

Defendant Burlington issued MVP a "liquor liability" insurance policy (the "Policy"). The Policy provides in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(*See* D.E. 89–2 at 27.)

The Policy contains an "assault and battery" exclusion, which provides as follows:

> This insurance does not apply to:
>
> a. Expected or Intended Injury
>
> "Injury"

(1) expected or intended from the standpoint of any insured: or

(2) arising out of an assault and battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery.

(*Id.* at 23.)

The Policy was in effect during all relevant events described herein.

GDW was not named as an insured or an additional insured under the Policy. (Id. at 4.) Plaintiff does not dispute this.

## C. The Sainvil action

On October 24, 2003, Gregory Junior Sainvil filed a lawsuit against GDW and MVP. Therein, Sainvil claimed that on the night of August 28, 2003, while he was inside the MVP Bar and Grill, other patrons of the establishment threatened Sainvil and acted in an aggressive and violent manner. (D.E. 89–2 at 82.) These patrons were negligently allowed to re-enter the MVP Bar and Grill after getting kicked out. (*Id.* at 82–83.) Sainvil was then violently attacked by these individuals and suffered a serious head injury. (*Id.* at 83.) In his complaint, Sainvil made the following claim against MVP:

14. At all times material, MVP, owed Plaintiff, GREGORY JUNIOR SAINVIL, a duty to maintain its premises in a reasonably safe condition, to prevent dangerous conditions known or reasonably known, and to exercise reasonable care to protect the Plaintiff from foreseeable risks of harm.

15. At all times material, MVP, negligently and carelessly breached said duty in that it did or failed to do one or more of the following acts or omissions, any or all of which constitute a breach of duty:

a. Allowed individuals that it knew or should have known were dangerous and violent to attack the Plaintiff on its premises; and/or

b. Allowed individuals that it knew or should have known were dangerous and violent to remain on and/or re-enter its premises; and or

c. Failed to provide an adequate number of properly trained security personnel to protect invitees, including the Plaintiff from foreseeable dangers; and/or

d. Failed to properly monitor the premises to prevent criminal attacks from occurring; and/or

e. Failed to adequately and timely warn its invitees, including the Plaintiff about dangers in knew or should have known about; and/or

f. Failed to come to the aid of the Plaintiff to reduce his injuries; and/or

g. Failed to provide adequate and reasonable security on the subject premises; and/or

h. Failed to train its employees to properly handle individuals causing disturbances and/or becoming unruly, aggressive, violent, dangerous, dangerous, and/or threatening on its premises; and/or

i. Failed to hire personnel qualified to properly handle individuals causing disturbances and/or becoming unruly, aggressive, violent, dangerous, and/or threatening on its premises; or/or

j. Failed to properly/adequately train its employees and/or other security personnel whom were responsible for providing security on its premises; and/or

k. Failed to properly supervise/monitor its employees and/or other security personnel whom were responsible for providing security on its premises; and/or

l. Failed to exercise reasonable care for the safety of the Plaintiff.

(*Id.* at 85–97.)

There were no contentions of liquor liability in Sainvil's complaint.

On June 22, 2004, GDW filed a cross-claim against MVP seeking contribution and indemnification. (D.E. 122 at 6.) On February 14, 2007, the state court in the Sainvil action granted GDW summary judgment and ordered MVP to defend, indemnify, and hold GDW harmless for the injuries suffered by Sainvil. (*Id.*) In August of 2007, Plaintiff, on behalf, of GDW, settled the Sainvil action for $800,000. (*Id.*) On August 15, 2007, GDW obtained a $956,285.52 final judgment against MVP for the $800,000 settlement plus $156,285.51 in attorney's fees and costs incurred by Plaintiff to defend the Sainvil claim. (*Id.*)

### D. GDW's efforts to get Defendant Burlington to indemnify and contribute pursuant to the Policy

On December 16, 2003, following receipt of Sainvil's Complaint, Defendant Burlington sent MVP a letter stating its position that it did not owe a duty of coverage under the Policy because Sainvil's claim did not involve liquor liability, and, further, was further barred by the assault and battery exclusion. (*Id.* at 4.)

On April 11, 2005, GDW sent Defendant Burlington a letter seeking contribution and indemnification regarding the Sainvil action. (*Id.* at 94–95.) On April 27, 2005, Defendant Burlington replied to GDW's letter and stated that it had previously denied MVP coverage under the Policy and that it would not indemnify GDW. (*Id.* at 97.)

### E. Plaintiff's Claim against Defendant Burlington

Plaintiff, as subrogee of GDW, is now seeking to recover some of GDW's $956,285.52 final judgment against MVP by suing Defendant Burlington. In its Amended Complaint, Plaintiff alleges that GDW is an additional insured under the Policy issued by Defendant Burlington to MVP.[1] Plaintiff also alleges that Defendant Burlington improperly refused to defend or indemnify MVP in the Sainvil action, although it is completely unclear from Plaintiff's Amended Complaint what rights Plaintiff has under Defendant Burlington's Policy issued to MVP.

## II. Standard of Review

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(c). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

---

1. As noted above, that allegation is incorrect.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548; *see also Fed.R.Civ.P.* 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." *Id.* at 587, 106 S.Ct. 1348. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.*

### III. Discussion

■ Defendant Burlington makes two argument for summary judgment: first, GDW was not an insured or additional insured under the Policy; second, Defendant Burlington correctly denied coverage under the Policy. The first argument is not at issue, as Plaintiff does not contest that GDW was not an insured or additional insured under the Policy. The second argument is clearly validated by the undisputed material facts and would foreclose any claim by Plaintiff against Defendant Burlington, even if Plaintiff somehow had some right to recover under the Policy.

■ The rule is firmly established in Florida that a liability insurer's obligation to defend a claim made against its insured must be determined from the allegations in the complaint. *See Higgins v. State Farm Fire & Cas. Co.,* 894 So.2d 5, 10 (Fla.2004). Additionally, there is no obligation on an insurer to defend an action against its insured when the pleading in question shows the applicability of a policy exclusion. *See Federal Insurance Co. v. Applestein,* 377 So.2d 229 (Fla. 3d DCA 1979). In Sainvil's complaint, there were no allegations of liquor liability. Furthermore, the complaint plainly alleges a claim against MVP for bodily injury arising out of an assault and battery. (*See* Sainvil Complaint, D.E. 89–2 at 83, 85–86 (alleging that Sainvil was violently attacked and suffered a head injury, and that MVP negligently failed to prevent the attack).)[2] The Policy excluded coverage for claims arising out of assault and battery. (*Id.* at 23.) As such, Defendant Burlington correctly denied coverage, and Plaintiff has no legitimate grounds for coverage or indemnity

---

**2.** Even though Sainvil's claims sounded in negligence, they still "arose out of" an assault and battery. *See First Specialty Ins. Corp. v. 633 Partners, Ltd.,* 300 Fed.Appx. 777, 782 (11th Cir.Fla.2008) (holding that negligent failure to prevent an assault and battery "arises out of" assault and battery under Florida cases interpreting exclusions similar to the instant one).

from Defendant Burlington nor for a declaratory judgment that Defendant Burlington breached its obligations under the Policy.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Burlington's Motion for Summary Judgment (D.E. 88) is **GRANTED** and Defendant Burlington is **DISMISSED** from this action.