[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15866

_____

D.C. Docket No. 8:12-cv-173-JDW-TGW

COMPOSITE STRUCTURES, INC., d/b/a
MARLOW MARINE SALES,

Plaintiff-Appellant,

versus

THE CONTINENTAL INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 20, 2014)

Before PRYOR and MARTIN, Circuit Judges, and GOLD,[*] District Judge.

GOLD, District Judge:

Plaintiff-Appellant Composite Structures, Inc. d/b/a Marlow Marine Sales

("Marlow") appeals the summary judgment awarded to Defendant-Appellee the

_____

[*] Honorable Alan Stephen Gold, Senior United States District Judge for the Southern District of
Florida, sitting by designation.

Continental Insurance Company ("Continental"). Marlow initiated this action seeking a declaratory judgment that Continental was under a duty to defend and indemnify Marlow in an underlying lawsuit against Marlow. The parties eventually filed cross-motions for summary judgment, and the district court granted Continental's motion and denied Marlow's motion. The court looked beyond the complaint in the underlying lawsuit to determine Continental's duty to defend and concluded no duty to defend arose. The court further concluded, because there was no duty to defend, there could be no duty to indemnify. Marlow filed this appeal from the final summary judgment, arguing the district court erred in looking beyond the underlying complaint and concluding there was no duty to defend. For the reasons stated herein, we affirm the judgment of the district court.

## I.    FACTS

Continental insured Marlow under four insurance policies: two marine services commercial general liability ("CGL") policies (ML 0870854 and ML 0871243), a marine excess liability policy (EX 0118381), and a boat dealers and marine operators coverage policy (H 1014716). The two CGL policies had effective dates of November 30, 2003 through November 30, 2004 (ML 0870854) and November 30, 2004 through November 30, 2005 (ML 0871243).

On February 12, 2007, two seamen, Debra Dent and Luther Hall, filed the underlying action, *Dent v. Composite Structures, Inc. d/b/a Marlow Marine Sales*,

2

No. 8:07-cv-274-VMC-AEP (M.D. Fla) (the "*Dent* complaint"). The *Dent* complaint alleged Marlow built, designed, completed, outfitted, manufactured, and sold the Seabird II, a pleasure vessel. The complaint further alleged Dent and Hall began employment aboard the Seabird II in June 2004, and during the time they worked aboard the vessel, they were exposed to excessive amounts of carbon monoxide, which caused them personal injuries and damage. The complaint included negligence and strict product liability claims against Marlow.

On March 7, 2007, Marlow's insurance broker provided a copy of the *Dent* complaint to Continental. The broker's cover letter identified Policy H 1014716, the boat dealers and marine operators coverage policy, and requested Continental open a claim file and assign an adjuster to the case.[1] The cover letter did not specifically include a request to defend or indemnify Marlow.

On March 21, 2007, Continental informed Marlow that it was attempting to locate the relevant policy and it could not determine its duty to defend or indemnify before confirming the issuance and terms and conditions of the policy and better understanding the circumstances surrounding the claim. Continental reserved its right to deny or limit coverage on various bases, including whether

---

[1] The policy referred to in the March 7, 2007 broker's cover letter is not one of the policies under which Marlow seeks coverage on appeal. Additionally, Marlow conceded before the district court that policy H 1014716 is inapplicable if there is no coverage under one of the CGL policies.

notice of the claim and occurrence were timely and in accordance with the terms of the policy and whether the loss may be excluded by a pollution exclusion.

On May 16, 2007, Continental issued a letter denying coverage under its four policies. On appeal, Marlow does not dispute denial under the marine excess liability and boat dealers and marine operators coverage policies. With respect to the two remaining policies (CGL policies ML 0870854 and ML 0871243), Continental denied both defense and indemnity coverage based on the following Pollution Buy Back Endorsement:

MARINE SERVICES LIABILITY POLICY
POLLUTION BUY BACK

The exclusion relating to pollution and/or contamination is deleted and replaced by the following:

A. This insurance does not apply to:

1. Any loss, damage, cost, liability, expense, fine or penalty:

(a) Which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time; ...

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, oil, petroleum products, chemicals and waste ....

* * *

C. Paragraph A. above shall not apply, however, provided that you establish that all of the following conditions have been met:

4

1. The "occurrence" was neither expected nor intended by the insured. An "occurrence" shall not be considered unintended or unexpected unless caused by some intervening event neither foreseeable nor intended by the insured.

2. The "occurrence" can be identified as commencing at a specific time and date during the term of this policy.

3. The "occurrence" became known to the insured within seventy-two (72) hours after its commencement.

4. The "occurrence" was reported in writing to us within thirty (30) days after having become known to the insured.

5. The "occurrence" did not result from the insured's intentional and willful violation of any government statute, rule or regulation.

Specifically, Continental stated the Pollution Buy Back Endorsement provided an exception to the pollution exclusion, but noted "all 5 conditions must be met in order for the exception to apply." Continental denied coverage under section C.1.3 because Marlow could not establish Dent and Hall's exposure to carbon monoxide became known to Marlow within 72 hours after its commencement. Continental also reserved "its right to deny coverage on the basis of noncompliance with any of the other conditions."

After settlement of the underlying action, Marlow brought suit against Continental seeking a declaratory judgment that Continental had a duty to defend and indemnify Marlow in the underlying action. As stated earlier, Marlow and Continental eventually filed cross-motions for summary judgment. The district court granted Continental's motion for summary judgment, denied Marlow's

5

motion, and entered judgment accordingly. Marlow filed this appeal from the final summary judgment.

## II.    STANDARD OF REVIEW

Our review of a summary judgment order is plenary, and we apply the same legal standards as those used by the district court. Lindley v. F.D.I.C., 733 F.3d 1043, 1050 (11th Cir. 2013). "Summary judgment is appropriate when there is no genuine issue of material fact and the evidence compels judgment as a matter of law in favor of the moving party." Fed. R. Civ. P. 56(a). The interpretation of an insurance contract is also a matter of law subject to *de novo* review. Chalfonte Condo. Apartment Ass'n Inc. v. QBE Ins. Corp., 561 F.3d 1267, 1274 (11th Cir. 2009).

## III.    DISCUSSION

In this diversity action, the federal courts must apply the substantive law of the forum state, Florida. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); Horowitch v. Diamond Aircraft Indus., Inc., 645 F.3d 1254, 1257 (11th Cir. 2011). In interpreting Florida law, we look first for case precedent from the Florida Supreme Court. Where we find none, we are "bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." Provau v. State Farm Mut. Auto. Ins. Co., 772 F.2d 817, 820 (11th Cir. 1985) (per curiam).

6

In Florida, "the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the actual facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc., 771 So. 2d 579, 580–81 (Fla. 4th DCA 2000); see also Jones v. Fla. Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 442–43 (Fla. 2005). "If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured." Lawyers Title Ins. Corp. v. JDC (America) Corp., 52 F.3d 1575, 1580–81 (11th Cir. 1995) (citations omitted). If the alleged facts and legal theories do not fall within a policy's coverage, no duty to defend arises. Id. at 1584.

The Florida Supreme Court has recognized there are exceptions to the general rule that the duty to defend is determined solely from the allegations of the complaint: "[T]here are some natural exceptions to this standard where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the complaint." Higgins v. State Farm Fire and Cas. Co., 894 So. 2d 5, 10 n.2 (Fla. 2005). Similarly, Florida District Courts of Appeal have concluded that, under certain circumstances, facts outside the underlying complaint can be considered when assessing the duty to defend. In Acosta, Inc. v. Nat'l Union Fire Ins. Co., 39 So. 3d 565 (Fla. 1st DCA 2010), the policy under which

the insured claimed defense and liability coverage contained a prior litigation exclusion. Id. at 567–68. In determining whether the prior litigation exclusion applied, the court concluded it was proper to consider the complaint from a previously-filed action, which complaint was outside the allegations of the underlying complaint. Id. at 574–75; see also Nationwide Mut. Fire. Ins. Co. v. Keen, 658 So. 2d 1101, 1103 (Fla. 4th DCA 1995) (permitting consideration of uncontroverted fact not contained in underlying complaint; "if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage, we think the carrier is relieved of defending.").[2]

We conclude this case presents an exception to the general rule that the duty to defend is determined solely from the allegations of the complaint. The Pollution Buy Back Endorsement in the subject CGL policies excludes from coverage loss or damage which would not have occurred but for the release of pollutants, which is defined to include gaseous contaminants, including fumes. The *Dent* complaint

---

[2] Our unpublished decision in First Specialty Ins. Corp. v. 633 Partners, Ltd., 300 F. App'x 777 (11th Cir. 2008) characterizes Keen as a departure from the general principle of determining the duty to defend only from the allegations in the complaint and also distinguishes Keen on its facts. 300 F. App'x at 785. Our conclusion today is not in conflict with First Specialty because, unlike the insured in First Speciality, see id. at 787, Marlow does not contest the fact that gives rise to a finding of no duty to defend, namely the date it provided Continental with written notice of the occurrence. Indeed, our case is akin to Keen: "an exceptional case[] in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage." 300 F. App'x at 786.

8

alleged loss or damage resulting from exposure to excessive amounts of carbon monoxide and carbon monoxide fumes; this loss or damage falls squarely within the pollution exclusion, and Marlow does not argue otherwise.

The Pollution Buy Back Endorsement provides an exception to the exclusion where five conditions are met. The Endorsement is unambiguous that all five conditions must be met to trigger coverage. At issue in this case are conditions two, three, and four, which require that the occurrence can be identified as commencing at a specific time and date during the term of the policy, the occurrence became known to the insured within 72 hours after its commencement, and the occurrence was reported in writing to the insurance company within 30 days after having become known to the insured, respectively.

The *Dent* complaint was silent as to when the occurrence was reported in writing to the insurance company. When the complaint was tendered to Continental for coverage on March 7, 2007, Continental knew—and Marlow does not dispute—that this was the first time Marlow reported the occurrence to Continental in writing. On appeal, Marlow concedes its written notice to Continental was untimely under the CGL policies, as explained in further detail below, but argues, because the *Dent* complaint was silent on that point, it did not completely foreclose the possibility of coverage and Continental had a duty to defend. We disagree.

9

Under Florida law, Continental was permitted to consider the uncontroverted date of written notice when determining its duty to defend because the date of written notice to the insurance company is not a fact that would normally be alleged in the complaint. See Higgins, 894 So. 2d at 10 n.2; see also Keen, 658 So. 2d at 1102–03. The *Dent* complaint consisted of products liability claims based on theories of negligence and strict liability, neither of which required the plaintiffs to allege the date the defendant informed its insurer of the occurrence. Indeed, plaintiffs would likely not know, when filing suit, when a defendant informs its insurer of the incident. Additionally, whether the insured provided sufficient notice of the claim is, specifically, the example provided by Higgins as a factual issue that would not normally be alleged in the underlying complaint. 894 So. 2d at 10 n.2 ("One example would be when the insurer claims that the insured did not provide sufficient notice of the claim and therefore breached an assistance and cooperation clause.")[3]

Having concluded it was proper to consider the date of written notice, we turn to Continental's duty to defend Marlow's claim. We conclude Continental had no duty to defend Marlow because, when considering the March 7, 2007 date of

---

[3] Given the specific terms of the CGL policies at issue here, Higgins' reference to an assistance and cooperation clause does not affect our analysis of whether it was proper to consider notice in determining Continental's duty to defend.

written notice and conditions two, three, and four of the exception to the pollution exclusion, it was not possible for Marlow's claim to fall within coverage.

The CGL policies had effective dates of November 30, 2003 through November 30, 2004 (ML 0870854) and November 30, 2004 through November 30, 2005 (ML 0871243). The latest the occurrence could have occurred to satisfy condition two of the exception—that the occurrence can be identified as commencing at a specific time and date during the term of the policy—is November 30, 2005. Condition three required Marlow to have knowledge of the occurrence within 3 days after its commencement, and condition 4 required Marlow to report the occurrence to Continental in writing within 30 days of it becoming known to Marlow. Thus, conditions three and four required Marlow to provide Continental with written notice of the claim within 33 days of the occurrence. It follows that the latest Marlow could have provided Continental with written notice of an occurrence under the CGL policies and satisfied the conditions of the exception to the pollution exclusion was 33 days after November 30, 2005. Marlow's March 2007 notice did not fall within this deadline, and, therefore, Continental was under no duty to defend Marlow.

Finally, we reject Marlow's contention that Continental was required to prosecute a successful declaratory judgment action in order to rely on facts outside of the underlying complaint as a basis for denial. Higgins provides, when the

11

insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint, "[W]e believe the courts may entertain a declaratory action seeking a determination of a factual issue upon which the duty to defend depends." Id. This language is permissive, not compulsory, and therefore does not require Continental to file a declaratory judgment action. Moreover, Florida law acknowledges that filing a declaratory judgment action is not the only manner by which an insurer can determine its duty to defend. See Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So. 2d 810, 815 (Fla. 1st DCA 1985) (a declaratory judgment action "is the preferable means" for determining an insurer's duty to defend, "but that is not to say it is the sole means by which the duty to defend may be terminated"). Most importantly, in the instant case, there is no factual dispute that needed to be resolved through a declaratory judgment action, as Marlow does not dispute that March 7, 2007 was the date it first reported the subject occurrence to Continental in writing.

In sum, we conclude it was proper to consider the date Marlow first reported the occurrence to Continental in writing when determining Continental's duty to defend, Continental had no duty to defend Marlow, and Continental was not required to prosecute a successful declaratory judgment action before denying Marlow a defense. Thus, summary judgment in favor of Continental was proper.

AFFIRMED.

12