STEADFAST INSURANCE
COMPANY, Plaintiff

v.

The CELEBRATION SOURCE, INC.,
Michael J. Campi, and others,
Defendants

Civil Action No. 15–61668–Civ

United States District Court,
S.D. Florida.

Signed January 27, 2017

Tracy Ann Jurgus, Miami, FL, Fay E. Ryan, Butler Weihmuller Katz Craig, LLP, Tampa, FL, for Plaintiff.

Mariano Ramon Gonzalez, Jr., Gonzalez & Associates, Miramar, FL, Robert Patrick Major, Ver Ploeg & Lumpkin, P.A., Orlando, FL, Jonathan Gdanski, Linda A. Alley, Fort Lauderdale, FL, Michal Meiler, Ver Ploeg & Lumpkin, P.A., Alejandro Brito, Zarco Einhorn & Salkowski, Miami, FL, for Defendants.

### Order on Motions for Summary Judgment

Robert N. Scola, Jr., United States District Judge

This matter is before the Court on cross motions for summary judgment. The Plain-

tiff, Steadfast Insurance Company, filed a motion for summary judgment against all defendants. (Mot. Summ J., ECF No. 122.) Two groups of defendants participated in the summary judgment pleadings: (1) The Celebration Source, Inc. ("Celebration"), Michael J. Campi, Paul M. Campi, David L. Campi (collectively, "the Celebration Defendants"); and (2) Robert Frank, Terri Frank, and their minor child E.F. (collectively, "the Frank Defendants"). The Frank Defendants responded to Steadfast's motion (Resp., ECF No. 129.), and the Celebration Defendants adopted the Frank Defendants' response. (ECF No. 140.) Steadfast replied. (Reply, ECF No. 147.) The remaining other defendants have not participated in the summary judgment pleadings.

Simultaneously, the Celebration Defendants moved for summary judgment. (Cross–Mot. Summ. J., ECF No. 124.) The Frank Defendants adopted the Celebration Defendants' motion. (ECF No. 119.) Steadfast responded. (Resp. to Cross–Mot., ECF No. 136.) Neither the Celebration Defendants nor the Frank Defendants replied, and the deadline to do so has passed.

The Court heard oral argument on the motions for summary judgment on January 4, 2017. The Court has reviewed the record, the parties' briefs, and the relevant legal authorities, and has considered the parties' oral arguments. For the reasons more fully explained below, the Court **grants** Steadfast's Motion for Summary Judgment (**ECF No. 122**) and **denies** the Celebration and the Frank Defendants' Cross–Motion for Summary Judgment (**ECF No. 124**).

### 1. Procedural/Factual Background

Steadfast's Complaint for declaratory relief arises from a state lawsuit filed by the Frank Defendants against the Celebration Defendants and the nonparticipating defendants for bodily injuries caused to E.F., a minor. (Am. Compl. ¶ 45., ECF No. 84.) On December 17, 2011, E.F. suffered injuries after slipping out of a recreational apparatus known as the "Psycho Swing." (*Id.* ¶ 16.) Celebration and its employees, the Campis, Soto, and Hutson, operated the Psycho Swing, which they had borrowed from The Event Depot. (Mot. Summ. J. at 1–2, ECF No. 122; Joint Pretrial Stipulation at 5, ECF No. 155.) Steadfast seeks a declaration that it has no duty to defend or indemnify the Celebration Defendants and other defendants in the state lawsuit and that it may withdraw its defense. (*Id.*; Am. Compl. ¶¶ 78–79, ECF No. 84.)

Celebration obtained a policy of insurance from Steadfast effective from December 19, 2010, until December 19, 2011, and issued under Florida's Surplus Lines Law ("the Policy"). (Aff. M. Campi, Ex. 1 at 12–13, ECF No. 121–1.) In applying for the Policy, Celebration's representative signed an Equipment Schedule, listing all of the apparatuses for which Celebration sought coverage. (*Id.* at 72–76.) The Equipment Schedule noted at the top of the first page, "Check all applicable. Please note that there is no coverage for any equipment not indicated." (*Id.* at 72.) Next, Steadfast provided Celebration with an insurance proposal, including an Activity and Amusement Device Schedule. (Depo. Tim Puleo Ex. 9–3 at 23, 27–28, ECF No. 118–18.) Finally, Steadfast mailed a typed version of the Equipment Schedule to Celebration along with the Policy, which again noted at the top of the first page, "Check all applicable. Please note that there is no coverage for any equipment not indicated." (*Id.* at 24.) None of the Schedules include a Psycho Swing. (*Id.* at 24, 72; Depo. Tim Puleo Ex. 9–3 at 27–28, ECF No. 118–18.)

The Policy included the Newly Acquired Recreational Apparatus (NARA) Endorsement. The NARA Endorsement provided:

Coverage for "bodily injury" and "property damage" arising out of the ownership, "maintenance", or use of recreational apparatus you "acquire" after the effective date of this policy, shall apply only if the following conditions are met:

1. We already cover all amusement device and recreational apparatus that you own and this newly "acquired" amusement device and/or recreational apparatus is similar in like, kind and value to an amusement device or recreational apparatus scheduled on this policy;

2. The newly "acquired" amusement device and/or recreational apparatus is not scheduled on Exclusion–Designated Operations or Recreational Apparatus Endorsement attached to and made a part of this policy or excluded by any other endorsement or coverage part forming this policy; and

3. You tell us within 30 days after you "acquire" the amusement device and/or recreational apparatus that you want us to cover it for Commercial General Liability.

. . . .

1. "Acquire" means being available for use in your operations through purchase, trade, rental, lease, or loan.

(Aff. M. Campi, Ex. 1 at 61, ECF No. 121–1.)

Two weeks after the incident on December 17, 2011, Celebration made contact with the Cossio Insurance Agency ("CIA"), Celebration's insurance agent. (Depo. Larry Cossio at 95–86, ECF No. 121–6; Plaintiff's Ex. 51 at 1, ECF No. 121–7.) Michael Campi ("Campi") spoke with Tammy Dyer, a customer service agent with CIA, on December 30, 2011. (*Id.*) Campi informed

Dyer that an individual was injured on a ride obtained from a third party. (*Id.*) Larry Cossio, the owner of CIA, then spoke with Campi regarding the same incident and informed Campi "he had a scheduled policy which ONLY covers the listed items, this was not listed so there is no coverage under the [general liability] policy." (*Id.*; Depo. Julie Campi at 42, ECF No. 118–8.) Cossio also informed Campi that the only coverage would be accident/medical coverage. (Plaintiff's Ex. 51 at 1, ECF No. 121–7.)

Later that same day, Dyer exchanged several emails with Dee Grogan, an Underwriter with Thompson Insurance Services ("Thomco").[1] (Notice Ex. A at 4–5, ECF No. 128–1.) The subject line of the email noted, "A[ccident] & H[ealth] claim form." (*Id.* at 26.) Dyer wrote, "Do you have the claim form for the A & H that the customer would complete? Or do they have to contact Zurich[2] claim dept?" (*Id.*) Grogan responded almost immediately, "Tammy, send claim report to: A & H.claimssubmissions@aig.com." (*Id.* at 25.) Dyer clarified, "Is there a form that they need to complete?" Grogan responded on January 3, 2012, "[T]hey would need to make contact through the email, indicating DOL and circumsances [sic], and then go from there." Dyer could not recall at her deposition if this email concerned the accident that occurred on December 17, 2011, involving the Celebration Defendants. (*Id.* at 6.) She simply recalled, "It was just asking how to report claims." (*Id.*)

On January 4, 2012, Dyer sent an email to Campi advising him to "see below the email address to file a claim for the accident medical. A & H.claimssubmissions@ aig.com. You will need to include in the

---

1. Thomco had underwriting authority from Steadfast and served as a program administrator. (Steadfast's Statement of Material Facts ¶ 3, ECF No. 120.)

2. Zurich is Steadfast's parent company. (Resp. to Cross–Mot. at 3, ECF No. 136.)

email the following[.] Policy Number#SRG9111252–1454–01[.] Date of Loss and circumstances[.] Your contact information[.]" (*Id.* at 24.) Dyer also communicated with Julie Campi: "Please find attached the instructions to file a claim for the general liability; GLO 5997895–04[.] Date of Loss and circumstances[.] Your contact information[.]" (*Id.* at 23.)

The only record of reporting the claim of the incident to Steadfast occurred on July 2, 2012, after Celebration received correspondence regarding the state lawsuit. (Depo. Julie Campi at 44–45, ECF No. 118–8; Depo. Julie Campi Ex. 38 at 10, ECF No. 118–9.) That report consisted of Dyer from CIA merely forwarding a copy of correspondence from E.F.'s counsel and providing Steadfast with Celebration's contact information. (*Id.*)

### 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). "If more than one infer-

ence could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court will not weigh the evidence or make findings of fact. *Id.* at 249, 106 S.Ct. 2505; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

The filing of cross-motions for summary judgment does not alter this legal standard. *Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc.*, 167 F.Supp.3d 1311, 1317 (S.D. Fla. 2016), *appeal dismissed* (Aug. 4, 2016) (Moore, J.). "Rather, cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id.* (internal quotations and citation omitted).

### 3. Legal Analysis

Steadfast asserts two arguments in its motion for summary judgment: (1) the Equipment Schedule, which clearly ex-

cludes coverage for the Psycho Swing, forms part of the express terms of the Policy; and (2) The Psycho Swing was not covered as a newly acquired apparatus because Celebration did not satisfy the conditions of the NARA Endorsement. The Frank and Celebration Defendants reject these assertions and claim that Celebration fully satisfied the NARA Endorsement. Further, the Frank and Celebration Defendants contend that Steadfast has a duty to defend based on the allegations of the state complaint irrespective of actual coverage or non-coverage of the Psycho Swing.

## A. The Equipment Schedule forms part of the policy

Steadfast argues that the Policy includes the Equipment Schedule because Celebration completed the schedule as part of its application for insurance and because Steadfast included the Equipment Schedule with the Policy documents that it provided to Celebration. (Mot. Summ. J. at 4, ECF No. 122.) In support, Steadfast relies on Florida Statutes, Chapter 627, which governs insurance policies, and on common law rules of interpretation. (Mot. Summ. J. at 5, ECF No. 122.) The Defendants concede that the Equipment Schedule does not list the Psycho Swing and excludes coverage for equipment not listed, but insist that the Equipment Schedule is not part of the Policy. (Resp. 1–2, ECF No. 129.) The Defendants note that the provision of Chapter 627 that requires the Court to interpret the insurance policy together with any applications does not apply to surplus line insurers such as Steadfast. (*Id.*)

As Steadfast notes, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto." Fla. Stat. § 627.419 (2010). All the same, the Defendants correctly state that this provision does not apply to surplus lines insurers. Fla. Stat. § 626.913(4) (2010) ("Except as may be specifically stated to apply to surplus lines insurers, the provisions of chapter 627 do not apply to surplus lines insurance authorized under … the Surplus Lines Law."). Notwithstanding the express limitation of section 626.913, surplus-lines insurance policies are not exempt somehow from settled rules of contract interpretation. *In re Int'l Mgmt. Associates, LLC*, No. 06–62966, 2012 WL 2105908, at *16 (Bankr. N.D. Ga. Apr. 3, 2012) ("[T]he Court does not accept the proposition that general principles of law … and, particularly, insurance law do not apply to surplus line insurance. … These general [contract] principles apply here, and no party has cited any authority to suggest that a policy for surplus line insurance is subject to different rules of contract interpretation.").

As relevant here, the law remains "well established that two or more documents executed by the same parties, at or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract." *Citicorp Real Estate, Inc. v. Ameripalms 6B GP, Inc.*, 633 So.2d 47, 49 (Fla. Dist. Ct. App. 1994) (collecting federal and Florida cases); *see also Trinidad & Tobago Unit Trust Corp. v. CB Richard Ellis, Inc.*, 280 F.R.D. 676, 679–80 (S.D. Fla. 2012) (Martinez, J.) (same). The Equipment Schedule and the Policy fall succinctly into this rule. The same parties, Celebration and Steadfast (through its program administrator Thomco), prepared and executed the application and the Policy at or near the same time. Celebration provided the information for the application in order to renew its insurance coverage, and thus it necessarily concerns the

same subject matter as the Policy. Under well settled contract law, the Court finds that the Equipment Schedule forms part of the Policy, and its terms must be read together with the terms of the Policy.

The language of the first condition of the NARA Endorsement reinforces this finding: "We *already cover all amusement device and recreational apparatus* that you own and this newly 'acquired' amusement device and/or recreational apparatus is similar in like, kind and value *to an amusement device or recreational apparatus scheduled on this policy*." (Aff. M. Campi, Ex. 1 at 61, ECF No. 121–1) (emphasis added). Only one possible way exists for the insurer and insured to know what apparatuses are "already cover[ed]" and "scheduled on this policy"—they must consult the apparatuses listed on the Equipment Schedule. The Court must construe the Policy together with the Equipment Schedule in order to give meaning to the terms contained in the NARA Endorsement. *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) ("[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable." (quoting *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n*, 117 F.3d 1328, 1338 (11th Cir. 1997))).

### B. Celebration did not satisfy the conditions of the NARA Endorsement:

 Even though the Policy expressly excluded coverage for the Psycho Swing, coverage could have existed if all of the conditions of the NARA Endorsement were satisfied. (Aff. M. Campi, Ex. 1 at 61, ECF No. 121–1.) Thus, in order for the Defendants to succeed on their motion for summary judgment and to obtain an order declaring that Steadfast has a duty to defend the state lawsuit, they must show that no genuine issue of material fact exists

regarding fulfillment of the NARA–Endorsement conditions. Specifically, the Defendants must show: (1) Celebration purchased, traded, rented, leased, or loaned the Psycho Swing; (2) Steadfast already covered all of Celebration's apparatuses; (3) the Psycho Swing was similar in like, kind, and value to an apparatus already covered under the Policy; (4) the Psycho Swing was not on a schedule of excluded apparatuses; and (5) Celebration informed Steadfast within thirty days of acquiring the Psycho Swing that Celebration wanted coverage for the Psycho Swing. Conversely, in order for Steadfast to succeed on its motion for summary judgment and to obtain an order declaring that Steadfast has no duty to defend the state lawsuit, it must show that no genuine issue of material fact exists with respect to Celebration's failure to satisfy just one of those five NARA–Endorsement conditions.

Based on the unrefuted summary judgment evidence, the Court finds that Celebration did not satisfy the notice condition of the NARA Endorsement. The record shows that on December 30, 2011, Celebration communicated with CIA's representative, who then communicated with Thomco. On that same day and on January 3, 2012, Thomco responded to CIA's inquiries, and on January 4, 2012, CIA advised Celebration how to submit claims for "accident medical" and for general liability. The record also shows that the emails exchanged between the companies concerned general reporting of claims—no one mentioned any specific accident, any specific apparatus, or any desire to seek additional coverage. Campi appears to have mentioned the Psycho Swing in a phone call with Cossio, but Cossio's response only clarified that the Psycho Swing was not covered for general liability. The Defendants can point to no evidence revealing any other instances of communication between Celebration and Steadfast regarding the accident with the

Psycho Swing until July 2, 2012—long after the thirty-day notice period expired.

■ Additionally, even if the Court were to accept that communication with Thomco constituted notice to Steadfast, which it does not, the content of those communications falls far short of the NARA–Endorsement notice condition. The NARA Endorsement's language remains clear and specific: "You tell us within 30 days after you 'acquire' the . . . apparatus *that you want us to cover it* for Commercial General Liability." (emphasis added). At the very least, Celebration's communication with CIA and Thomco should have mentioned the terms "Psycho Swing," "new apparatus," or "coverage" to give rise to a reasonable inference that Celebration attempted to inform Steadfast that it wished to obtain coverage for a newly acquired apparatus. *See Jackson*, 372 F.3d at 1280. The Court simply cannot infer from the content of the communications that Celebration satisfied the notice condition.

■ Next, the Defendants insist that coverage of the Psycho Swing automatically existed during the thirty-day notice window. According to the Defendants, Steadfast must show that it was prejudiced by the noncompliance in order to deny coverage for a failure to comply with a condition subsequent. (Resp. at 19, ECF No. 129.) The Defendants rely on *Rabatie v. U.S. Security Insurance Company*, 581 So.2d 1327 (Fla. Dist. App. 1989), to support their argument. There, based on the principle that "insurance policies must be construed against the insurance company, and in favor of the insured and insurance coverage[,]" the court held that immediate coverage existed for a newly acquired automobile "subject to a condition subsequent" that the insured notify the insurer within thirty days. *Id.* at 1329.

However, the "automatic insurance" clause applicable in *Rabatie* remains entirely distinct from the clause at issue here. The *Rabatie* clause essentially states, "You have coverage *if* . . . ," while the NARA Endorsement states, "You do *not* have coverage *unless* . . . ." The Court cannot find that automatic coverage exists for the Psycho Swing where the basic introductory premise excludes coverage and Celebration did not comply with the mandatory conditions. Finally, even if the NARA–Endorsement notice condition were considered a condition subsequent, Celebration did not comply with the condition within the thirty-day window. The Rabatie Court recognized that such a failure constituted grounds for denial of coverage. *Id.* at 1331.

Because Steadfast undeniably has shown Celebration's non-compliance with one of the NARA–Endorsement conditions, the Psycho Swing was not covered under Celebration's Policy. The Court will not analyze, then, Celebration's compliance with the other NARA–Endorsement conditions.

## C. Duty to Defend

■ As a final matter, the Defendants assert that Steadfast has a duty to defend the Celebration Defendants because the state-court complaint alleges facts that potentially could bring the lawsuit within the Policy's coverage and does not allege facts that would bring the lawsuit within any policy exclusions. (Resp. at 9–10, ECF No. 129.) Steadfast argues that the mere mention of the Psycho Swing in the state-court complaint places the lawsuit squarely within a policy exclusion and thus voids any duty to defend. (Reply at 10, ECF No. 147.)

■ "Under Florida law, an insurance provider's duty to defend an insured party depends *solely* on the facts and legal theories alleged in the pleadings and claims against the insured." *Stephens v. Mid–Continent Cas. Co.*, 749 F.3d 1318, 1323

(11th Cir. 2014) (internal citation and quotations omitted); *see also Composite Structures, Inc. v. Continental Ins. Co.*, 560 Fed.Appx. 861, 864 (11th Cir. 2014). Naturally, if the pleaded facts "do not fall within a policy's coverage, no duty to defend arises." *Id.* at 865. "[T]o make a determination as to the insurer's duty to defend, the Court must apply the language of the Policy to the facts of the underlying complaint." *Philadelphia Indem. Ins. Co. v. Yachtman's Inn Condo. Ass'n, Inc.*, 595 F.Supp.2d 1319, 1322–23 (S.D. Fla. 2009) (King, J.).

Here, the underlying complaint alleges throughout that the incident occurred on the Psycho Swing. (*See, e.g.*, Am. Compl. Ex. E. ¶ 24, ECF No. 84–5.) As noted above, the Defendants concede that the Psycho Swing is not listed as covered equipment on the Equipment Schedule. (Resp. 1–2, ECF No. 129.) The Court has determined that as a matter of law the Equipment Schedule forms part of the Policy. The clear language of the Policy, then, excludes "coverage for any equipment not indicated" on the Equipment Schedule. (Aff. M. Campi, Ex. 1 at 72, ECF No. 121–1.)

Of course, Steadfast seeks a declaration on its duty to defend the Celebration Defendants based not only on the policy exclusion, but also on Celebration's failure to comply with the conditions of an exception to the policy exclusion, the NARA Endorsement. The Court's analysis determining that Celebration did not comply fully with the NARA Endorsement required the Court to look beyond the facts alleged in the state-court complaint.

■ While not favored, a court faced with declaring whether a duty to defend exists may look beyond the four corners of the complaint in limited and exceptional circumstances. *Stephens*, 749 F.3d at 1323. For instance, an "exception[ ] to this standard [exists] 'where an insurer's claim that

there is no duty to defend is based on factual issues that would not normally be alleged in the complaint.'" *Composite Structures*, 560 Fed.Appx. at 865 (quoting *Higgins v. State Farm Fire & Cas. Co.*, 894 So.2d 5, 10 n.2 (Fla. 2005)). The Florida Supreme Court in *Higgins* specifically provided as an example a situation where "the insurer claims that the insured did not provide sufficient notice ...." *Id.* "In such circumstances, [the Florida Supreme Court] believe[d] the courts may entertain a declaratory action seeking a determination of a factual issue upon which the insurer's duty to defend depends." *Id.* Applying *Higgins*, the Eleventh Circuit in *Composite Structures* affirmed the district court's finding that no duty to defend arose where the insurer denied coverage based on the insured's failure to comply with a mandatory condition of an exception to a policy exclusion. 560 Fed.Appx. at 862, 864–65. Here, the Court limited its inquiry beyond the facts pleaded in the state-court complaint to only those facts determinative of Celebration's compliance with the notice condition of the NARA Endorsement.

The Court finds that the state-court complaint does not give rise to a duty to defend. The Policy expressly excludes coverage for the Psycho Swing, the underlying state-court complaint pleads facts entirely regarding an incident on the Psycho Swing, and a limited review of the facts beyond the state-court complaint reveals that Celebration did not comply with the notice condition of the exception to the policy exclusion.

### 4. Conclusion

Accordingly, the Court **grants** Steadfast's Motion for Summary Judgment (**ECF No. 122**) against the Celebration Defendants, the Frank Defendants, and The Event Depot. The Court further **denies** the Celebration and the Frank Defen-

dants' Cross–Motion for Summary Judgment (ECF No. 124).

**Done and ordered**, at Miami, Florida, on January 27, 2017.