# Third District Court of Appeal

## State of Florida

Opinion filed April 17, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-1744
Lower Tribunal No. 18-4805
_____

## Advanced Systems, Inc., etc.,
Appellant,

vs.

## Gotham Insurance Company, etc.,
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Law Office of Daniel Te Young, P.A., and Daniel Te Young (Pompano Beach), for appellant.

Kennedys CMK LLP, and Neil E. Bayer, Josh Levy, and Katrine L. Hyde (Basking Ridge, NJ), for appellee.


Before SALTER, SCALES, and LINDSEY, JJ.

LINDSEY, J.

Advanced Systems, Inc. seeks review, pursuant to Fla. R. App. P. 9.110(m) and 9.130, of the trial court's determination that Appellee Gotham Insurance Company had no duty to defend or indemnify Advanced Systems under a commercial general liability policy. Because the trial court improperly relied on extrinsic evidence in granting Gotham's Motion for Summary Judgment, we reverse.

## I. BACKGROUND

This case stems from a failed foam fire suppressant system in an aircraft hangar that resulted in damage to several airplanes. In March 2017, Orion Jet Center LLC, the hangar's owner, filed suit against Moss & Associates, LLC, the general contractor that constructed the aircraft hangar, and Moss's performance bond surety, none of which are parties to this appeal. In November 2017, Moss brought a third-party complaint against Advanced Systems, the subcontractor that installed the hangar's fire suppression system.[1] Advanced Systems, in turn, tendered defense to Gotham, its insurer.

---

[1] In its third-party complaint, Moss alleges that Advanced Systems "failed to construct and install the Manual Release Stations in a manner that would prevent water intrusion." According to the allegations in Orion's complaint, which are incorporated by Moss's third-party complaint, moisture infiltrated the manual release stations, resulting in unintended and unexpected activation of the foam fire suppression system.

Gotham insured Advanced Systems with a commercial general liability policy under its Fire Suppression Insurance Program (the "Policy"). The Policy contains the following insuring agreement:

**SECTION 1—COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

The Policy also includes the following Total Pollution Exclusion by endorsement:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" . . . .

3

The Policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The Policy does not define "irritant," "contaminant," or "chemicals."

Because Gotham did not respond to the tender of defense, Advanced Systems filed a complaint for declaratory judgment against Gotham on February 20, 2018. In May 2018, Advanced Systems filed a motion for partial summary judgment on the issue of Gotham's duty to defend and indemnify. In June 2018, Gotham filed its own motion for summary judgment, arguing that it had neither a duty to defend nor a duty to indemnify because coverage was barred by the Total Pollution Exclusion.

In support of its motion, Gotham attached the declaration of Christopher Ward, a claims specialist. Mr. Ward attached a copy of the Material Safety Data Sheet ("MSDS") for Chemguard C2, which Gotham claims is the name of the foam fire suppressant that was released into the aircraft hangar. Based on the MSDS, which details Chemguard C2's chemical composition, Gotham argued that the fire suppressant foam was a "pollutant" and therefore excluded from coverage under the Policy.

On June 15, 2018, the trial court held a summary judgment hearing. Over Advanced Systems' objection, Gotham relied on the MSDS submitted with its

4

motion for summary judgment. During the hearing, the following exchange took place:

> THE COURT: Where did this come from? Material Safety Data Sheet, where is this coming from?
>
> [COUNSEL FOR GOTHAM]: The Internet, Judge. It's publically available record. MSD sheets are publically available. We did -- the product that was used was Chemguard, we Googled it.

On July 23, 2018, the trial court entered an order granting Gotham's motion for summary judgment, specifically relying on the MSDS to conclude that the Total Pollution Exclusion operated as a bar to coverage and any duty to defend because the released foam constituted a "pollutant" within the meaning of the Policy. This timely appeal follows.

## II.   ANALYSIS

We review the trial court's determination concerning Gotham's duty to defend and to indemnify de novo. See Transcontinental Ins. Co. v. Jim Black & Assoc., 888 So. 2d 671, 674 (Fla. 2d DCA 2004); Herrera v. C.A. Seguros Catatumbo, 844 So. 2d 664, 665 (Fla. 3d DCA 2003) ("[I]ssues pertaining to insurance coverage present questions of law subject to de novo review."). Additionally, where "the trial court grants one party's cross-motion for summary judgment on a declaratory judgment action, our review is de novo." Liork, LLC v. BH 150 Second Ave., LLC, 241 So. 3d 920, 922 (Fla. 3d DCA 2018) (citing Lee

5

Cty. Elec. Coop., Inc. v. City of Cape Coral, 159 So. 3d 126, 127 (Fla. 2d DCA 2014)).

Under Florida law, an insurer's duty to defend is separate and distinct from its duty to indemnify, and it is more extensive. First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 695 So. 2d 475, 476 (Fla. 3d DCA 1997) (citing Klaesen Bros., Inc. v. Harbor Ins. Co., 410 So. 2d 611, 612-13 (Fla. 4th DCA 1982)). "A liability insurer's obligation, with respect to its duty to defend, is not determined by the insured's actual liability but rather by whether the alleged basis of the action against the insurer falls within the policy's coverage." XL Specialty Ins. Co. v. Skystream, Inc., 943 So. 2d 848, 849 (Fla. 3d DCA 2006). Here, we look to the allegations in Moss's third-party complaint against Advanced Systems to determine whether Gotham has a duty to defend. See Biltmore Const. Co., Inc. v. Owners Ins. Co., 842 So. 2d 947, 949 (Fla. 2d DCA 2003) ("An insurer's duty to defend a complaint depends solely on the allegations in the complaint filed by a third party against the insured." (citing Home Owners Warranty Corp. v. Hanover Ins. Co., 683 So. 2d 527, 528 (Fla. 3d DCA 1996))).

Even where the complaint alleges facts partially within and partially outside the coverage of a policy, the insurer is nonetheless obligated to defend the entire suit, even if the facts later demonstrate that no coverage actually exists. Morgan Intern. Realty, Inc. v. Dade Underwriters Ins. Agency, Inc., 617 So. 2d 455, 458

6

(Fla. 3d DCA 1993) (citing Grissom v. Commercial Union Ins. Co., 610 So. 2d 1299, 1306–07 (Fla. 1st DCA 1992)).  And, the insurer must defend even if the allegations in the complaint are factually incorrect or meritless.  Jones v. Florida Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 443 (Fla. 2005).  As such, "an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy."  First Am. Title Ins. Co., 695 So. 2d at 476.  "Furthermore, once a court finds that there is a duty to defend, the duty will continue 'even though it is ultimately determined that the alleged cause of action is groundless and no liability is found within the policy provisions defining coverage.'"  Mid-Continent Cas. Co. v. Royal Crane, LLC, 169 So. 3d 174, 181 (Fla. 4th DCA 2015) (quoting Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2009)).  Finally, because Gotham relies on an exclusion to deny coverage, "it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation."  See Castillo v. State Farm Florida Ins. Co., 971 So. 2d 820, 824 (Fla. 3d DCA 2007) (disagreed with on other grounds in Washington Nat. Ins. Corp. v. Ruderman, 117 So. 3d 943 (Fla. 2013)).

Although Gotham agrees that the general rule in Florida is that an insurer's duty to defend is determined from the allegations in the complaint, it argues that the trial court properly considered extrinsic evidence of Chemguard C2's chemical

composition because an exception to the general rule applies "where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint." See Higgins v. State Farm Fire & Cas. Co., 894 So. 2d 5, 10 n.2 (Fla. 2004).

We disagree that the narrow exception outlined in Higgins is applicable here. See id. at 10 (explaining that because the allegations in the complaint govern the duty to defend, "there generally is no need for a declaratory action in respect to the insurer's obligation to defend"); see also Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1323-24 (11th Cir. 2014) (explaining that although Florida courts have, in "special circumstances," considered extrinsic facts, "such cases are best viewed 'as exceptional cases in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claim outside the scope of coverage'" (quoting First Specialty Ins. Corp. v. 633 Partners, Ltd., 300 Fed. Appx. 777, 786 (11th Cir.2008))); Sinni, 676 F. Supp. 2d at 1323 ("In exceptionally rare cases, however, where the complaint omits a reference to an uncontroverted fact that, if pled, would have clearly placed the claim outside the scope of coverage, equity may relieve an insurer from its duty to defend.").

Gotham relies on two cases to support its contention that this is an exceptional case requiring the trial court to consider extrinsic facts. First, in Composite Structures, Inc. v. Continental Insurance Co., 903 F. Supp. 2d 1284,

8

1286 (M.D. Fla. 2012), two seamen alleged that they suffered bodily injury from exposure to carbon monoxide fumes while working aboard a yacht that the insured designed, manufactured, and sold. These allegations plainly fell within the scope of a pollution exclusion. Id. at 1288. However, the policy also contained an exception to the pollution exclusion with specific timing and notice requirements. Id. at 1287. The court permitted evidence beyond the complaint showing that the insured was unable to satisfy the timing and notice requirements because the pertinent dates and timeframes would not normally be alleged in the underlying complaint, and, importantly, the evidence was undisputed. Id. at 1288-90.

Gotham also relies on Nationwide Mutual Fire Insurance Co. v. Keen, 658 So. 2d 1101 (Fla. 4th DCA 1995). In Keen, the insured conceded that he operated a water craft with an engine more powerful than coverage afforded. Id. at 1103. Although the complaint did not allege anything with respect to engine horsepower, the court permitted the evidence because it was uncontroverted, "and the claimant [made] no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage . . . ." Id.

Here, unlike in Composite Structures and Keen, the extrinsic evidence was not uncontroverted or manifestly obvious to all so as to preclude coverage. Our review of the transcript of the summary judgment hearing reveals that Advanced Systems consistently contested the nature and composition of the released fire

9

suppression foam. Similarly, Advanced Systems repeatedly objected to the use of the MSDS as unauthenticated evidence[2] not in the record and beyond the scope to determine whether a duty to defend existed. In short, the record before us contains no objective fact that is manifestly obvious to all involved, nor are there uncontroverted facts that simply were not pled in the Underlying Action or in Moss's third-party complaint.[3]

## III. CONCLUSION

We therefore conclude that the alleged facts in Moss's third-party complaint fairly and potentially bring Moss's suit within policy coverage and that the trial court erred in relying on extrinsic evidence to determine that a duty to defend did not arise below.

Reversed and remanded.

---

[2] Summary judgment evidence must be in the form of evidence that would be admissible at trial. See Gidwani v. Roberts, 248 So. 3d 203, 208 (Fla. 3d DCA 2018) ("Because 'only competent evidence may be considered by the court in ruling upon a motion for summary judgment,' a document attached to a motion for summary judgment or a document attached to an affidavit that is not otherwise authenticated is not competent evidence." (quoting Daeda v. Blue Cross & Blue Shield of Fla., Inc., 698 So. 2d 617, 618 (Fla. 2d DCA 1997))).

[3] We do not reach the issue of whether, irrespective of the admissibility of the MSDS, the relied-upon pollution exclusion would be applicable in this case to relieve the insurer of liability.